UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 03-016** |
| **HARRY H. ADAIR** | **SECTION: I/3** |

### ORDER AND REASONS

Before the Court is the motion of defendant, Harry H. Adair, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.[1] For the following reasons, defendant's motion is **DENIED IN PART** and **GRANTED IN PART**.

*BACKGROUND*

On January 23, 2003, Adair was charged in a one-count indictment with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I) and § 1956(h).[2] The conspiracy involved a transaction with two co-defendants for the sale of Venezuelan bonds to undercover federal agents.[3] Adair was represented at trial by John J. Craft, Esq. ("Craft"). On March 2, 2004, the jury returned a guilty verdict.[4] He was sentenced on August 18, 2004 to a term of two hundred forty months.[5] On January 13, 2006, defendant's conviction was affirmed by the United States Court of Appeals for the Fifth Circuit and the matter was remanded for

---

[1] R. Doc. No. 346, mot. to vacate, set aside, or correct sentence (hereinafter "§ 2255 mot.").

[2] R. Doc. No. 1, indictment.

[3] R. Doc. No. 223, 5th Cir. j. of Jan. 13, 2006, at 2.

[4] R. Doc. No. 53, jury verdict, at 5.

[5] R. Doc. No. 83, j., at 2.

resentencing. United States v. Adair, 436 F.3d 520, 529 (5th Cir. 2006). On remand, this Court again imposed a two hundred forty month term of imprisonment.[6] The sentence was affirmed by the Fifth Circuit on January 3, 2007. United States v. Adair, No. 06-30320, 2007 WL 14663, at *1 (5th Cir. Jan. 3, 2007). Certiorari was denied by the U.S. Supreme Court with respect to Adair's appeals of both his conviction and sentence. Adair v. United States, 547 U.S. 155, 126 S. Ct. 2306, 164 L. Ed. 2d 826 (2006); Adair v. United States, 127 S. Ct. 3072, 168 L. Ed. 2d 779 (2007).

Adair filed his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on September 5, 2007.[7] He appeals on five grounds: (1) ineffective assistance of counsel; (2) denial of a fair and speedy trial; (3) excessive punishment; (4) compassionate early release pursuant to U.S. Sentencing Guidelines § 1B1.13; and (5) government witness perjury and manipulation of evidence.[8]

*LAW AND ANALYSIS*

**I.      Standard of Law**

28 U.S.C. § 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is

---

[6] R. Doc. No. 232, resentencing j., at 2.

[7] R. Doc. No. 346, § 2255 mot.

[8] Id. at 4-9.

otherwise subject to collateral attack." 28 U.S.C.A. § 2255(a) (2008); see Hill v. United States, 368 U.S. 424, 426-27, 82 S. Ct. 468, 470, 7 L. Ed. 2d 417 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. See United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." United States v. Hayman, 342 U.S. 205, 222-23, 72 S. Ct. 263, 274, 96 L. Ed. 232 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. See Williamson, 183 F.3d at 462. If the court determines that the prisoner is entitled to relief "[it] shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C.A. § 2255(b). "The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." United States v. Garcia, 956 F.2d 41, 45 (4th Cir. 1992) (citing Andrews v. United States, 373 U.S. 334, 339, 83 S. Ct. 1236, 1239, 10 L. Ed. 2d 383 (1963)).

**II.     Analysis**

*A.     Ineffective Assistance of Counsel*

The standard for judging the performance of counsel was established by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In Strickland, the Court articulated a two-part test for evaluating ineffective assistance claims that requires a defendant to prove (1) deficient performance; and (2) resulting prejudice. Strickland, 466 U.S. at 692-93. The Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.

Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999). In deciding ineffective assistance of counsel claims, the court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893.

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the Court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d 230, 236-37 (5th Cir. 2002); Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of

counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 701, 122 S. Ct. 1843, 1854, 152 L. Ed. 914 (2002) (citing Strickland, 466 U.S. at 689). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 592. The burden is on petitioner to demonstrate that counsel's strategy was unreasonable. Strickland, 466 U.S. at 689.

Pursuant to § 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." Adair alleges ineffective assistance of counsel based on: (1) counsel's failure to call witnesses, including the defendant; (2) counsel's failure to present evidence; and (3) counsel's failure to negotiate a plea agreement.[9]

*1. Craft's Refusal to Allow Adair to Testify and to Call Witnesses on His Behalf*

Adair asserts that Craft failed to call witnesses "that would have exonerated [him] of all criminal culpability."[10] On July 23, 2008, the Court ordered Adair to supplement his § 2255 motion and provide greater specificity in support of his allegation that Craft refused to call exculpatory witnesses. Adair responded on August 12, 2008, and identified five witnesses that were not called at trial: 1) Mary Green of the Federal Bureau of Investigation ("Green"); 2) "Mr. Crawford" of the Drug Enforcement Agency ("Crawford"); 3) "the woman who came to [Adair's] house on Jan 13-14 2003 with the DEA"; 4) Wendell Blount ("Blount"); and 5) Adair

---

[9] R. Doc. No. 346, § 2255 mot., at 4. Adair also alleges ineffectiveness with respect to the denial of a speedy trial. That claim is addressed in the following section.

[10] Id.

himself.[11]

"As a general rule, '[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Bagneris v. Cain, No. 04-3256, 2008 WL 2185218, at *14 (E.D. La. May 19, 2008) (quoting Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003)) (alteration in original); see also United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) ("[T]his Court has viewed with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant.").

"To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Bray v. Quarterman, 265 Fed. App'x 296, 298 (5th Cir. 2008). The petitioner must also show prejudice, i.e., a reasonable probability that those uncalled witnesses would have made a difference in the outcome at trial. See id.

(i)     Mary Green and "Mr. Crawford"

Adair asserts that Green and Crawford would have testified that he lacked criminal intent during the commission of the offense. However, Adair does not explain how these witnesses would be in a position to know that he lacked criminal intent. Even if Green and Crawford would have been permitted to offer lay testimony to the Court, Adair does not provide any

---

[11] *See* R. Doc. No. 373 at 2.

factual basis to support these witnesses' conclusion that he lacked criminal intent.[12]  Adair also fails to demonstrate that these witnesses were available and that they would testify favorably on Adair's behalf.  Adair's claim with regard to Green and Crawford is rejected under Strickland.

### (ii)    The Woman Who Visited Adair's House

With respect to this unidentified individual, Adair appears to assert that she would have testified about the government's efforts to enlist Adair as a confidential informant.  However, Adair does not allege that this witness would have testified that Adair was actually a confidential informant at the time of the conspiracy.  Moreover, during trial, there was testimony from Special Agent Sabrina Gonzales ("Gonzales") that the Drug Enforcement Agency ("DEA") had denied Adair's request to serve as a confidential informant.  Gonzales testified that Adair had been "blackballed" based on his unsatisfactory prior work as an informant, and that "No DEA office is allowed to work with someone who's been blackballed."[13] Based on the testimony presented at trial, the Court finds that there is not a reasonable probability that calling this unidentified individual to testify about alleged efforts to recruit Adair as an informant would have affected the trial's outcome.

### (iii)   Wendell Blount

Adair claims that Blount would have testified that he had lied to federal agents about Adair's culpability in order to receive compensation as an informant for United States Customs

---

[12] Had Green and Crawford  been offered as expert witnesses, Federal Rule of Evidence 704(b) prevents experts from presenting testimony concerning a criminal defendant's alleged mental state.  See Fed. R. Evid. 704(b); United States v. Espino-Rangel, 500 F.3d 398, 400 (5th Cir. 2007) ("FRE 704(b) does not permit an expert witness in a criminal case to testify whether a defendant did or did not have the mental state or condition constituting an element of the crime charged . . . .").

[13] R. Doc. No. 79, Tr. transcript at 238.

Service ("Customs"). Adair also claims that Blount's testimony would have shown that Blount was committing criminal acts while working with Customs.

Mike Tyson ("Tyson"), a government witness at trial, testified that Blount was paid $3,000 for information he provided about Adair in 2000 in connection with an earlier money laundering scheme. Tyson stated that some of that money was reimbursement for expenses Blount had incurred in furnishing the information to the government. Tyson also testified that he did not rely solely on information provided by Blount in his 2000 investigation of Adair.[14] Further, Adair's counsel was able to elicit testimony on cross examination concerning Blount's prior conviction for criminal conduct.[15] The government's case did not turn on the credibility of Blount, nor on whether Blount had a history of criminal conduct. The Court, therefore, concludes that Adair did not suffer Strickland prejudice by the fact that Blount did not testify at trial.

(iv)  Harry Adair

Adair asserts that during the proceedings, "[w]hen [he] continued to demand that [he] testify on [his] own behalf, [Craft] continuously told [him] to be quiet and sit down."[16] Had Craft permitted him to testify, Adair asserts, he "could have . . . told the truth to the jury as to what really transpired at the time and that [he] had no criminal intent, nor criminal culpability."[17] Adair further asserts that Craft did not properly advise him of his right to take the stand on his

---

[14] R. Doc. No. 78-4, Tr. transcript at 206.

[15] Id. at 199-200.

[16] R. Doc. No. 373 at 1.

[17] Id. at 3.

own behalf.

"A criminal defendant's right to testify is well established." United States v. Mullins, 315 F.3d 449, 452 (5th Cir. 2002) (footnote omitted). "Only the defendant may waive this right, not his counsel, and it must be knowing and voluntary." Id. (footnotes omitted).

At trial, the defense presented no witness testimony or other evidence. Further, the present record does not suggest that Adair waived the right to testify on his own behalf following an independent inquiry by the Court. Indeed, at the sentencing hearing, Adair stressed that he never received the opportunity to testify.[18] In light of the fact that the defense presented no evidence, while Adair maintains that his testimony would have explained "what really transpired," the Court will hold an evidentiary hearing for the limited purpose of determining whether Adair was denied effective assistance of counsel when Craft allegedly prevented him from testifying and whether Craft properly advised Adair of his right to testify. The Court will also consider whether such alleged deficient performance by counsel was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

*2. Craft's Failure to Present Evidence*

Adair also contends that his conviction should be vacated because his attorney failed to present exculpatory evidence.[19] A defendant's counsel "has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation

---

[18] Sentencing transcript at 7.

[19] Id.

9

is unnecessary." Smith v. Dretke, 422 F.3d 269, 283-84 (5th Cir. 2005) (citing Ransom v. Johnson, 126 F.3d 716, 723 (5th Cir. 1997)).  While defense counsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers," Lovett v. Florida, 627 F.2d 706, 708 (5th Cir. 1980), an attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance.  Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994).  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).  Here, Adair's vague and unsubstantiated allegation of Craft's failure to "show the evidence to prove my innocence" falls short of the specificity requirements.[20]  Without offering evidence of prejudice caused by the omission of specific evidence or a showing that Craft's strategy was unreasonable, Adair's claim is without merit.

*3. Craft's Failure to Negotiate a Plea Agreement on Adair's Behalf*

Adair further alleges that Craft refused to negotiate a "deal" on his behalf.[21]  Again, petitioner fails to establish details of what sort of plea agreement could have been obtained, and how counsel's failure to negotiate resulted in prejudice.  See Carter v. Cain, 2007 WL 4442346, at *10 (E.D. La. 2007) (Knowles, M.J.) ("Even if the Court were to assume that counsel refused to undertake plea negotiations on his client's behalf, and were further to assume that counsel therefore performed deficiently, petitioner still must show that he was prejudiced as a result.").  Moreover, the United States maintains that it was unwilling to offer Adair a "deal" other than a

---

[20] Id.

[21] Id.

guilty plea and any effort by defense counsel to negotiate a plea bargain would have been unsuccessful.[22]  Adair's ineffectiveness claim based on failure to negotiate is without merit.

B.      *Fair and Speedy Trial*

Adair argues that the delay between his arraignment and the start of his trial denied him his right to a speedy trial.  On January 30, 2003, Adair was arraigned, with trial set for March 31, 2003.[23]  On March 5, 2003, the Court granted the continuance requested by the United States in order for the government to locate evidence in Venezuela.[24]  The Court ordered, pursuant to 18 U.S.C. § 3161(h)(9), that the period of delay resulting from the continuance be excluded in computing the time within which the trial must be commenced.[25]  The trial commenced over thirteen months after Adair's arraignment, on March 1, 2004.[26]

Adair concedes that he did not raise this issue on direct appeal.  A defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for the default and actual prejudice as a result of the error.  See United States v. Dismore, 77 F.3d 476, 1995 WL 798559, at *1 (5th Cir. 1995).  Adair argues that his failure to raise the speedy trial claim on direct appeal owes to Craft's refusal to do so, despite requests from Adair.[27]

---

[22] R. Doc. No. 350, mem. in opp'n, at 16.

[23] R. Doc. No. 10.

[24] R. Doc. No. 13, order, at 5-6.  The record reflects no objection by Adair prior to the granting of the continuance.

[25] Id. at 6.  Under the Speedy Trial Act, a period of delay of up to one year is excludable.  *See* 18 U.S.C.A. § 3161(h)(9).

[26] R. Doc. No. 78.  It appears from the record that as of his initial appearance on January 16, 2003, Adair was in the custody of the United States.

[27] R. Doc. No. 346, at 6.

11

Ineffective assistance of counsel may itself "operate as cause for procedural default." See United States v. Sherman, 33 F.3d 1378, 1994 WL 486955, at *3 (5th Cir. 1994).

To prevail on the ineffective assistance claim with respect to Craft's failure to pursue the speedy trial claim on appeal, Adair must satisfy the two-part Strickland test. Id. Addressing the prejudice prong, Adair's claim fails because he does not state how his trial outcome would have been different, but for Craft's alleged deficient performance. See Strickland, 466 U.S. at 694. Because he has not satisfied the prejudice prong of the Strickland test, the Court need not reach the deficient performance prong. Kimler, 167 F.3d at 893. Adair's claim of ineffectiveness fails.

Because Adair has not convinced the Court that he had good cause for failing to pursue the speedy trial issue on direct appeal, the claim has been defaulted and it is not subject to review in a collateral proceeding. See United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991). The Court, therefore, need not address whether Adair suffered actual prejudice from the alleged speedy trial violation. See id.

C.     *Excessive Punishment*

Petitioner's next ground for appeal rests on his assertion that the U.S. Sentencing Guidelines were misapplied, and his base offense level should have been eight with a criminal history category of four.[28] This argument fails for three reasons. First, the misapplication of sentencing guidelines is not cognizable under § 2255 motions. See Williamson, 183 F.3d at 462. Second, Adair is foreclosed from making a claim that his sentence was unreasonable pursuant to

---

[28] Id. at 7.

United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), because he has already raised, and the Fifth Circuit has decided, that issue. Adair, 2007 WL 14663, at *1. Finally, violation of an individual's Eighth Amendment right to be free from cruel and unusual punishment only extends to "extreme sentences that are 'grossly disproportionate' to the crime." Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S. Ct. 2680, 2705, 115 L. Ed. 2d 836 (1991) (quoting Solem v. Helm, 463 U.S. 277, 288, 303, 103 S. Ct. 3001, 3008, 3016, 77 L. Ed. 2d 637 (1983)). A twenty year sentence is reasonable and proportionate to a conviction for conspiring to launder $155,000,000 in drug proceeds. Therefore, Adair's excessive punishment claim is without merit.

D.   *Compassionate Early Release Pursuant to United States Sentencing Guidelines § 1B1.13*

Adair argues that he is entitled to compassionate early release on the grounds that he is legally blind and terminally ill with liver cancer, which effectively renders his two hundred forty month sentence a death sentence.[29] Considering the fact that a § 1B1.13 motion must be made by the Director of the Bureau of Prisons, and the Director has not filed such a motion on Adair's behalf, his argument fails.[30] In any event, "[m]isapplications of the Sentencing Guidelines . . . are not cognizable in § 2255 motions." Williamson, 183 F.3d at 462.

E.   *Government Witness Perjury and Manipulation of the Evidence*

---

[29] Id. at 8.

[30] R. Doc. No. 350, mem. in opp'n, at 12. Section 1B1.13 states in pertinent part:
   *Upon motion of the Director of the Bureau of Prisons*, . . . the court may reduce a term of imprisonment . . . if . . . the court determines that (1)(A) extraordinary and compelling reasons warrant such a reduction . . . (2) the defendant is not a danger to the safety of any other person or to the community . . . and (3) the reduction is consistent with this policy statement.

U.S. Sentencing Guidelines Manual § 1B1.13 (2007) (emphasis added).

Adair alleges that "government witnesses committed perjury and had manipulated all evidence in their favor."[31] He does not name specific witnesses or identify evidence that has been affected. A strict burden of proof is placed on a federal habeas petitioner to demonstrate not only that witnesses' testimony was fraudulent or perjured, but also that the prosecution had actual knowledge of the perjury and that the testimony was material. Carter v. Johnson, 131 F.3d 452, 458 (5th Cir. 1997). Petitioner's unsubstantiated claims fall short of meeting this heavy burden.

Accordingly,

**IT IS ORDERED** that the Federal Public Defender is appointed to represent Adair in connection with the sole claim remaining, that is, ineffective assistance of counsel relative to Adair's right to testify on his own behalf. A status conference will be held on Friday, December 12, 2008, at 2:00 p.m. to schedule future dates. An evidentiary hearing with respect to this claim is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion to vacate, set aside, and correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED** in all other respects.

New Orleans, Louisiana, November 24, 2008.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[31] R. Doc. No. 346, § 2255 mot., at 10.